Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
angrave@hollandhart.com

Kevin C. McAdam (*application for pro hac vice admission forthcoming*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8267
kcmcadam@hollandhart.com

ATTORNEYS FOR PLAINTIFF CREDIT SAGE LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CREDIT SAGE LLC | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| CREDIT WELLNESS LLC | |
| Defendant. | |

## COMPLAINT

Plaintiff Credit Sage LLC ("Credit Sage" or the "Company"), by and through its attorneys, Holland & Hart LLP, submits its Complaint against Defendant Credit Wellness LLC ("Credit Wellness"), as follows:

## <u>NATURE OF THE ACTION</u>

1.      As Credit Sage's business took off, two of its member-managers became disaffected with Credit Sage and their percentage ownership share of the Company.

2.      Those two member-managers—to further their own economic interests at the expense of the Company to which they owed fiduciary duties—then decided to start a new

1

business, Credit Wellness, to compete directly with Credit Sage. They also recruited a key Credit Sage employee to leave the Company and join Credit Wellness.

3.    Instead of growing its business organically, and competing fairly with Credit Sage, Credit Wellness sought to take improper and unlawful shortcuts, to Credit Sage's detriment.

4.    Accordingly, Credit Wellness conspired with Credit Sage's two disaffected member-managers and its former key employee to misappropriate Credit Sage's trade secrets and to unlawfully use Credit Sage's confidential information, which was stolen from it, to compete against the Company.

5.    Such conduct violates the Defend Trade Secrets Act, 18 U.S.C § 1836, the Wyoming Uniform Trade Secrets Act, Wyo. Stat. Ann. § 40-24-101, *et seq.*, and constitutes a breach of the disaffected member-managers' fiduciary duties to Credit Sage and the similar duties owed to the Company by its former key employee.

6.    As a result, Credit Wellness is liable for: its own misappropriation of trade secrets; aiding and abetting the disaffected member-managers' and former key employee's misappropriation of trade secrets; aiding and abetting the disaffected member-managers' and former key employee's breaches of fiduciary duties to Credit Sage; tortiously interfering with the contract Credit Sage has with those member-managers and with Credit Sage's business expectancies; and conspiring to unlawfully undermine Credit Sage's business.

7. Credit Wellness's unlawful conduct has directly damaged Credit Sage and will continue to do so, requiring Credit Wellness to be enjoined[1] and, ultimately, ordered to pay monetary damages for any other harm inflicted which might be able to be remedied by the payment of such damages.

## PARTIES

8. Credit Sage LLC is a member-managed Delaware limited liability company with a principal office address of 1032 E. Brandon Blvd. #1089, Brandon, FL 33511.

9. Credit Wellness LLC is a Wyoming limited liability company with a principal office address of 5830 E. 2nd St., Ste. 7000 #7893, Casper, WY 82609.

## JURISDICTION AND VENUE

10. Credit Sage LLC has asserted a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.[2]

11. All other claims asserted by Credit Sage are so related to the claim for which the Court has original jurisdiction that they form part of the same case and controversy. Accordingly, the Court has supplemental jurisdiction of those claims pursuant to 28 U.S.C. § 1367(a).

12. Venue is proper in this judicial district under 28 U.S.C. § 1391, because the events and circumstances giving rise to the claims asserted here occurred in this judicial district.

---

[1] Credit Sage intends to file a motion for expedited discovery, after which it anticipates filing a motion for preliminary injunction.

[2] The Court might also have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) depending upon the citizenship of Credit Wellness's members, which is not yet known but will be one of the subjects of the expedited discovery the Company intends to request.

13.     The Court has personal jurisdiction over Credit Wellness, because Credit Wellness is a Wyoming limited liability company.

## GENERAL ALLEGATIONS

14.     Credit Sage was formed on February 17, 2022.

15.     Credit Sage provides nationwide credit repair services to individuals hoping to: improve their credit; fix inaccuracies on their credit reports; and/or dispute collections, charge-offs, balance errors, or any other impediments to having better credit.

16.     The Operating Agreement of Credit Sage became effective on February 22, 2022, having been signed by (1) Alex Brola; (2) Jiri Zajpt; and (3) Adam Copley.[3]

17.     Under the Operating Agreement, these individual members manage Credit Sage.

18.     Brola is the Company's majority owner, with a 51% stake in the Company, and the only member of the Company to have contributed capital to it.

19.     Zajpt and Copley each hold a 16.33% interest in the Company.[4]

20.     Zajpt is a citizen of the Czech Republic and lives in Prague.

21.     Copley is a citizen of the United Kingdom and lives in Portugal.

22.     Another individual and former key employee, Tina Belfhada, who was the Company's Operations and Sales Lead (but not a member-manager of the Company), is implicated here. Belfhada's current state or country of residence is unknown.

---

[3] A fourth individual also signed the Operating Agreement but is not implicated here.

[4] The fourth signatory to the Operating Agreement holds the remaining 16.33% interest.

23.    As member-managers, Brola, Zajpt, and Copley each owe fiduciary duties to Credit Sage, including duties of loyalty and care; duties of disclosure; duties of good faith and fair dealing; and the duty not to compete with the Company.

24.    More specifically, the Operating Agreement provides, in pertinent part, as follows:

H. Fiduciary Duties of the Members.

1.  *Loyalty and Care.* Except to the extent otherwise provided herein, each Member shall have a fiduciary duty of loyalty and care similar to that of members of limited liability companies organized under the laws of Delaware.

2.  *Competition with the Company.* The Members shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest adverse to the Company unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto. The Members shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto. In the event that a Member is the sole Member of the Company, no vote shall be required.

3.  *Duties Only to the Company.* [. . .] The Members shall owe fiduciary duties of disclosure, good faith and fair dealing to the Company and to the other Members.

25.    As Operations and Sales Lead, Belfhada also owed fiduciary duties to Credit Sage, according to statutory and common law.

26.    Credit Sage has built its business on Brola's experience in the credit repair industry and the capital he contributed to the Company.

27.    Because of Brola's investment of time, experience, and capital, the Company has grown rapidly and achieved financial success.

28.    In little time, the Company has gone from having 20 employees to 200 employees.

29.     During that time, the Company had developed trade secrets and other confidential information relating to its business, methods, techniques, processes, personnel, and customers.

30.     For example, Credit Sage has developed sales scripts, operational processes, advertising strategies, hiring processes, and software (including Customer Relationship Management ("CRM") software and marketing tools), all of which derive economic value from not being known to the public, and all of which are subject to reasonable efforts by the Company to maintain their secrecy.

31.     Similarly, the Company maintains other valuable, non-public information that it also actively treats as trade secrets, such as: the names, addresses, and contact information of the Company's customers and prospective customers, as well as other personal and financial information relating to its customers and prospects; pricing and financial data; nonpublic information about other companies, including current or potential suppliers and vendors; and information related to the Company's methods, services, pricing, costs, margins and mark ups, finances, strategies, business plans, agreements, decision-making systems, technology, policies, processes, procedures, practices, marketing, sales, techniques, and agent information.

32.     Relatedly, the Company maintains a host of other confidential information including, but not limited to, its emails, flowcharts, graphs, spreadsheets, resource manuals, employee handbooks, videotapes, calendars, day timers, planners, rolodexes, and telephone directories maintained on personal computers, laptop computers, personal digital assistants, and other devices.

33.     Credit Sage has gone to great lengths to protect its trade secrets and other confidential information. For example, Company employees are bound by non-disclosure agreements, confidentiality agreements, and/or the Company's employee handbook, which

require the Company's trade secrets and confidential information to be protected. Further, Credit Sage's CRM software, databases, sales sheets, marketing scripts, and marketing platforms are locked down, such that only executive and key employees with a business need to access such information can do so.[5]

34.    Credit Sage's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

35.    As member-managers of Credit Sage, Zajpt and Copley have had plenary access to the Company's trade secrets and other confidential information. Belfhada has likewise had access to such information in her role as Operations and Sales Lead.

36.    Despite—or, perhaps better, because of—the Company's success, starting around January 2023, Zajpt and Copley began conducting themselves in a way that caused Brola serious concerns. For example, Zajpt and Copley refused to take direction from Brola and would frequently act contrary to his instructions. They also began telling Company employees that they would be fired if they were to talk to Brola. Further, they began complaining about the division of the Company's ownership interest, arguing explicitly that Brola deserved less of an ownership interest and that they were entitled to more. The subtext of their disaffection and willingness to promote their own interests above those of the Company soon became clear.

37.    Recently, Credit Sage learned of a new Wyoming-based credit repair company, Credit Wellness, offering the same services as Credit Sage.

---

[5] Consistent with 18 U.S.C. § 1835 and Wyo. Stat. Ann. § 40-24-105, Court-ordered measures to preserve the secrecy of Credit Sage's trade secrets will be necessary for Credit Sage to further detail the nature of its trade-secret information.

38.     Credit Sage's preliminary research indicates that Credit Wellness is essentially a carbon copy of Credit Sage.

39.     Indeed, from what Credit Sage has learned, it appears that Credit Wellness is using Credit Sage's sales scripts, operational processes, hiring processes, software, and advertising strategies and advertisements.

40.     Credit Sage's initial investigation has revealed that the domain name "creditwellnessllc.com" is registered to Zajpt.

41.     Upon information and belief, Zajpt and Copley are the principals behind Credit Wellness, and Belfhada is assisting its operations.

42.     Credit Sage's preliminary research indicates that, just like Credit Sage, Credit Wellness provides nationwide credit repair services to individuals hoping to: improve their credit; fix inaccuracies on their credit reports; and/or dispute collections, charge-offs, balance errors, or any other impediments to having better credit.

43.     Zajpt and Copley never disclosed to Credit Sage or its other member-managers that they were forming Credit Wellness: a company clearly designed to compete directly with Credit Sage. Belfhada similarly never made any such disclosure.

44.     Because Credit Sage and its other member-managers were not aware of Zajpt's, Copley's, and Belfhada's conduct, no vote ever occurred regarding whether they would be permitted to compete against the Company on behalf of, and through, Credit Wellness. Accordingly, a majority of Credit Sage's members never consented to Zajpt's, Copley's, or Belfhada's conduct.

45.     Relatedly, neither the Company nor a majority of its members ever consented to Zajpt, Copley, Belfhada, and/or Credit Wellness using Credit Sage's sales scripts, operational processes, hiring processes, software, advertising strategies, advertisements, or other trade secrets and confidential information.

46.     As evident from Credit Wellness's current operations, Zajpt, Copley, and Belfhada improperly acquired and unlawfully used and disclosed Credit Sage's trade secrets and other confidential information.

47.     As one specific example, Zajpt exported the Company's entire customer database, including all of its customers' personal and credit information, which he has refused to return to Credit Sage.[6]

48.     Credit Wellness has acquired Credit Sage's trade secrets and other confidential information by improper means and is unlawfully using them to compete against the Company.

49.     Credit Wellness's actions put at risk Credit Sage's competitive advantage, its reasonable business expectancies, and ultimately the livelihood of its 200 employees.

**First Claim for Relief**
**(Misappropriation of Trade Secrets Under the**
**Defend Trade Secrets Act, 18 U.S.C § 1836)**

50.     Credit Sage incorporates all above allegations herein by reference.

51.     Through Zajpt, Copley, and Belfhada, Credit Wellness has obtained Credit Sage's trade secrets and other confidential and proprietary information belonging to Credit Sage.

---

[6] By its forthcoming motion for expedited discovery, Credit Sage intends to promptly discover the breadth and depth of the trade secret and confidential information Zajpt, Copley, and Belfhada have unlawfully stolen and disclosed to Credit Wellness.

52.    The confidential and proprietary information and trade secrets contain information which derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable to, other persons outside of Credit Sage who can obtain economic value from its disclosure or use.

53.    The confidential, proprietary, and trade secret information obtained through Zajpt, Copley, and Belfhada relates to a service used in interstate commerce.

54.    The confidential and proprietary information obtained through Zajpt, Copley, and Belfhada was subject to reasonable efforts by Credit Sage to maintain its secrecy.

55.    Credit Wellness was not authorized by Credit Sage to retain the confidential, proprietary, and trade secret information obtained through Zajpt, Copley, and/or Belfhada.

56.    Zajpt, Copley, Belfhada, and Credit Wellness knew, or should have known, they were not authorized to take such information.

57.    As a result of Credit Wellness's misappropriation of Credit Sage's trade secrets, Credit Sage has been and will be irreparably harmed and will continue to suffer irreparable harm unless and until the conduct of Credit Wellness is enjoined by this Court.

58.    As a result of Credit Wellness's willful and malicious misappropriations, Credit Sage is entitled to:

    a.    injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A); and/or

    b.    actual and exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(B) and (C); and/or

    c.    attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

**Second Claim for Relief**
**(Misappropriation of Trade Secrets under the**
**Uniform Trade Secrets Act, Wyo. Stat. Ann § 40-24-101, *et seq*.)**

59.     Credit Sage incorporates all above allegations herein by reference.

60.     Through Zajpt, Copley, and Belfhada, Credit Wellness has obtained Credit Sage's trade secrets and other confidential information belonging to Credit Sage.

61.     Through Zajpt, Copley, and Belfhada, Credit Wellness has misappropriated the Company's trade secrets and failed to protect its other confidential information.

62.     Credit Wellness willfully and maliciously disregarded Credit Sage's rights in misappropriating the Company's trade secrets and failing to protect its other confidential information.

63.     As a direct competitor of the Company, Credit Wellness has benefitted from its unlawful actions.

64.     Credit Sage has been, and will continue to be, damaged by Credit Wellness's actions.

65.     As a result of Credit Wellness's actions, Credit Sage is entitled to:

  a.     injunctive relief pursuant to Wyo. Stat. Ann. § 40-24-102; and/or

  b.     actual and exemplary damages pursuant to Wyo. Stat. Ann. § 40-24-103(b); and/or

  c.     attorney fees pursuant to Wyo. Stat. Ann. § 40-24-104.

**Third Claim for Relief**
**(Aiding and Abetting Misappropriation of Trade Secrets)**

66.     Credit Sage incorporates all above allegations herein by reference.

67.    By their actions, Zajpt, Copley, and Belfhada obtained Credit Sage's trade secrets and other confidential information belonging to Credit Sage.

68.    By their actions, Zajpt, Copley, and Belfhada misappropriated the Company's trade secrets and failed to protect its other confidential information.

69.    Zajpt, Copley, and Belfhada willfully and maliciously disregarded Credit Sage's rights in misappropriating the Company's trade secrets and failing to protect its other confidential information.

70.    As a company formed, founded, and operated by Zajpt, Copley, and Belfhada, and benefitting from their unlawful actions, Credit Wellness knowingly participated in their misappropriation of Credit Sage's trade secrets.

71.    Credit Sage has been, and will continue to be, damaged by Credit Wellness's actions in aiding and abetting Zajpt's, Copley's, and Belfhada's unlawful conduct.

72.    As a result of Credit Wellness's actions, Credit Sage is entitled to:

    a.    injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) and Wyo. Stat. Ann. § 40-24-102; and/or

    b.    actual and exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and Wyo. Stat. Ann. § 40-24-103(b); and/or

    c.    attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and Wyo. Stat. Ann. § 40-24-104.

### Fourth Claim for Relief
### (Aiding and Abetting Breach of Fiduciary Duty)

73.    Credit Sage incorporates all above allegations herein by reference.

74.    Zajpt and Copley, as member-managers of Credit Sage, owed to Credit Sage multiple fiduciary duties, including duties of loyalty and care; duties of disclosure; duties of

good faith and fair dealing; and the duty not to compete with the Company. Belfhada owed the Company similar statutory and common law duties.

75.    Zajpt, Copley, and Belfhada breached their fiduciary duties to the Company by misappropriating its trade secrets, establishing a company to compete with Credit Sage, and failing to disclose their unlawful conduct to the Company and its disinterested member-managers.

76.    As a company formed, founded, and operated by Zajpt, Copley, and Belfhada, and benefitting from their unlawful actions, Credit Wellness knowingly participated in their breaches of the fiduciary duties owed to Credit Sage.

77.    Credit Sage has been, and will continue to be, damaged by Credit Wellness's actions.

78.    Credit Wellness's actions were intentional and unlawful, entitling Credit Sage to seek exemplary damages.

### Fifth Claim for Relief
### (Intentional or Tortious Interference with Contract, Business Expectancy, and Prospective Economic Advantage)

79.    Credit Sage incorporates all above allegations herein by reference.

80.    The Operating Agreement is a valid and enforceable contract between Credit Sage, on the one hand, and Zajpt and Copley, on the other.

81.    Credit Wellness was aware of the Operating Agreement.

82.    Credit Wellness also knew that Credit Sage expected Zajpt and Copley to comply with their contractual obligations.

83.     Credit Wellness intended to have Zajpt and Copley breach the Operating Agreement.

84.     Credit Wellness intentionally and improperly induced Zajpt and Copley to breach the Operating Agreement by encouraging or otherwise requiring them to: (a) misappropriate Credit Sage's trade secrets; (b) use or disclose the Company's confidential information without Credit Sage's consent; (c) provide Credit Sage's trade secrets and confidential information to Credit Wellness; (d) compete with Credit Sage while still member-managers of the Company; and (e) breach their fiduciary duties to Credit Sage.

85.     Credit Wellness's actions have improperly interfered with Credit Sage's prospective economic advantage from its relationships with its patrons and prospective customers.

86.     Credit Wellness's above-described conduct constitutes tortious interference with the Operating Agreement and with Credit Sage's business expectancies and prospective economic advantage.

87.     As a direct and proximate result of Credit Wellness's unlawful conduct, Credit Sage has suffered damages in an amount to be proven in these proceedings.

88.     Credit Wellness's actions were intentional and unlawful, entitling Credit Sage to seek exemplary damages.

**Sixth Claim for Relief**
**(Civil Conspiracy)**

89.     Credit Sage incorporates all above allegations herein by reference.

90.     A meeting of the minds occurred between Credit Wellness, Zajpt, Copley, and Belfhada to undermine Credit Sage's business by overtly and unlawfully competing against it

through misappropriating Credit Sage's trade secrets; using or disclosing the Company's confidential information without Credit Sage's consent; breaching the fiduciary duties Zajpt, Copley, and Belfhada owe to Credit Sage, and tortiously interfering with Credit Sage's Operating Agreement.

91.     As a direct and proximate result of this unlawful conduct, Credit Sage has suffered damages in an amount to be proven in these proceedings.

92.     Credit Wellness's actions were intentional and unlawful, entitling Credit Sage to seek exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing allegations and claims for relief, Credit Sage prays for a judgment against Credit Wellness as follows:

1.     for damages against Credit Wellness to compensate Credit Sage for all general, special, incidental, and consequential damages incurred or to be incurred by Credit Sage as the direct and proximate result of Credit Wellness's conduct, and for such other relief as is just and equitable including, but not limited to:

       a.     monetary damages, including exemplary damages;

       b.     attorney fees and costs for this action as provided by law; and

       c.     pre- and post-judgment interest as provided by law.

2.     for damages, including exemplary damages, attorney fees, and injunctive relief as authorized by the Defend Trade Secrets Act, 18 U.S.C. § 1836;

3.     for damages, including exemplary damages, attorney fees, and injunctive relief as authorized by Wyoming's Uniform Trade Secrets Act, Wyo. Stat. Ann. § 40-24-101, *et seq.*;

4.      for all necessary and proper injunctive relief to prevent Credit Wellness from using Credit Sage's trade secrets; benefitting via its unlawful competition with Credit Sage; aiding and abetting the breaches of fiduciary duties committed by two of Credit Sage's member-managers and one of its former key employees; tortiously interfering with Credit Sage's Operating Agreement; and conspiring to unlawfully compete with Credit Sage; and

5.      for such other relief as the Court may deem proper.

## JURY DEMAND

Credit Sage demands a trial by jury on its claims against Credit Wellness.

DATED:  June 22, 2023

Respectfully submitted,

*/s/ Andrea N. Grave*
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: 307.778.4200
angrave@hollandhart.com

Kevin C. McAdam (*application for pro hac vice admission forthcoming*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8267
kcmcadam@hollandhart.com

ATTORNEYS FOR PLAINTIFF
CREDIT SAGE LLC