## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2024 JAN -9  PM 1: 56

MARGARET BOTKINS, CLERK
CASPER.

CREDIT SAGE LLC,

Plaintiff,

v.

CREDIT WELLNESS LLC,

Defendant.

Case No. 1:23-CV-110-SWS

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CREDIT WELLNESS, LLC'S RULE 12(b)(1), 12(b)(6), and 12(b)(7) MOTION TO DISMISS

---

This matter comes before the court on Defendant Credit Wellness LLC's Motion to Dismiss Plaintiff Credit Sage LLC's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), titled "Defendant's Responses Pursuant to Fed. R. Civ. P. 12(b)(1)(6)&(7) in Lieu of Answer". (ECF No. 14.) Plaintiff filed an opposition to the motion to dismiss. (ECF No. 29.) In relation to the instant motion to dismiss, the parties were also ordered to file corporate disclosure statements "to name and identify the citizenship of every individual or entity whose citizenship is attributed to each party in compliance with Fed. R. Civ. P. 7.1(a)(2)." (ECF No. 21.). The parties each filed their respective corporate disclosure statements thereafter. (ECF Nos. 25, 26.) Having considered the parties' arguments and the record herein, and being otherwise fully advised, the Court determines the Defendant's motion to dismiss must be granted in part and denied in part.

## BACKGROUND

Plaintiff Credit Sage LLC filed suit in this court alleging that its competitor Defendant Credit Wellness LLC was started by two disaffected member-managers and a former employee of Credit Sage LLC, Jiri Zajpt, Adam Copley, and Tina Belfhadfa (hereinafter "Zajpt," Copley," and "Belfhadfa.") (ECF No. 1 at 1–2.). Plaintiff's complaint alleges that Zajpt, Copley, and Belfhadfa took trade secrets and other confidential information belonging to Credit Sage LLC to Credit Wellness LLC, a competing firm, in violation of their fiduciary duty under the common law and pursuant to Credit Sage LLC's "Operating Agreement." (ECF No. 1 at 6–14.) Credit Wellness, LLC, however, is the only Defendant in the complaint, and Zajpt, Copley, and Belfhadfa have not been listed as co-defendants in the complaint. (Id. at 1, 3, 15.)

Plaintiff brings six causes of action against Credit Wellness, LLC. Claim I alleges misappropriation of trade secrets in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. (ECF No. 1 at 9–10.) Claim II also alleges misappropriation of trade secrets, but in violation of the Wyoming Uniform Trade Secrets Act ("WUTSA"), Wyo. Stat. Ann. § 40-2-101, *et seq*. (ECF No. 1 at 11.) Claim III asserts a claim for "aiding and abetting" the misappropriation of trade secrets in violation of both the DTSA and the WUTSA. (ECF No. 1 at 11–12.) Claim IV alleges that Credit Wellness aided and abetted Zajpt, Copley, and Belfhadfa in the breach of their fiduciary duty. (ECF No. 1 at 12–13.) Claim V alleges that Credit Wellness LLC engaged in tortious interference with a contract, business expectancy, and prospective economic advantage. (ECF No. 1 at 13–14.) Finally, Claim VI alleges that Credit Wellness LLC was involved in a "civil conspiracy" with Zajpt, Copley, and Belfhadfa against Credit Sage LLC. (ECF No. 1 at 14–15.)

In its current motion to dismiss, Defendant seeks dismissal of Claims I–III of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff failed to state a claim upon which relief can be granted. Defendant further moves to dismiss Claims II–VI of the amended complaint under Federal Rule of Civil Procedure 12(b)(1)—if and only if, the court grants Defendant's Rule 12(b)(6) motion to dismiss—arguing that the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Finally, Defendant moves to dismiss Claims III–VI of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(7), asserting that Plaintiff has failed to join Zajpt, Copley, and Belfhadfa as necessary and indispensable parties. (ECF No. 14 at 1.)

## STANDARDS OF REVIEW

### 1.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To overcome a Rule 12(b)(6) motion to dismiss, a complaint's (or counterclaim's) factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). The Court

accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## 2. Rule 12(b)(1) & Supplemental Jurisdiction

Dismissal under Fed. R. Civ. P. 12(b)(1) is warranted where a court lacks subject matter jurisdiction over the claims. Federal courts possess limited jurisdiction and must have a statutory or constitutional basis to exercise jurisdiction over a specific action. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The burden is on the party seeking to invoke federal jurisdiction to establish that such jurisdiction exists. *Id.* Under 28 U.S.C. § 1367(a), "Congress granted statutory authority to district courts to hear [state law] claims that form part of the same case or controversy as the claims on which original federal jurisdiction is based" in the interests of "economy, convenience, fairness, and comity underlying the judicially-created doctrine of pendent jurisdiction[.]" *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004) (internal quotations omitted). This "supplemental jurisdiction" allows a Federal Court to retain "jurisdiction over mixed state and federal claims where 'The state and federal claims . . . derive from a common nucleus of operative fact.'" *Id.* at 1165 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). However, "[e]ven where a 'common nucleus of operative fact' exists, federal jurisdiction is not mandatory over pendent claims or parties . . . and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." *Id.*

### 3. **Rule 12(b)(7)**

Rule 12(b)(7) allows the Court to dismiss an action based on a "failure to join a party under Rule 19." Federal Rule of Civil Procedure 19 "provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party." *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir.), *opinion modified on reh'g*, 257 F.3d 1158 (10th Cir. 2001). First, the court must examine whether the absent party is a "required" or "necessary" party. *Id.*; Fed. R. Civ. Pro. 19(a)(1). Second, "a necessary person must be joined as a party if joinder is feasible." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1289 (10th Cir. 2003). Third, "[i]f a necessary person cannot be joined," the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, because the absent person . . . is indispensable to the litigation at hand." *Id.* (citing Fed. R. Civ. Pro. 19(b)). "In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true and draw all inferences in favor of the non-moving party." *Leago v. Ricks*, 2021 WL 1192939, at *7 (D. Colo. Mar. 30, 2021); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*, 2014 WL 1016072, at *2 (D. Colo. Mar. 14, 2014). However, "[t]he proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band of Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994); *Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006) ("On a Rule 12(b)(7) motion, the defendants have the burden of showing that the plaintiff has failed to join a necessary and indispensable party."); *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 346 (D. Del. 2009) ("The movant has the burden of

showing why the absent party should be joined.") (quoting *Colón v. Blades*, 570 F. Supp. 2d 204, 209 (D.P.R. 2008)).

## DISCUSSION

### 1.  Defendant's Rule 12(b)(6) Arguments

First, Defendant moves to dismiss Plaintiff's misappropriation of trade secret claims under the Defendant Trade Secrets Act and the Wyoming Uniform Trade Secrets Act (Claims I and II) pursuant to Rule 12(b)(6), arguing that Plaintiff has not plead said violations with the requisite specificity in order to assert a plausible claim under either federal or Wyoming state law. (ECF No. 14 at 5–13.) Specifically, Defendant argues that (1) Plaintiff merely alleged general categories of information which cannot be considered trade secrets; (2) Plaintiff failed to adequately allege that Credit Sage LLC owned said trade secrets; and (3) Plaintiff failed to adequately allege that the Defendant misappropriated any trade secret. (Id.)

### 1.1  Whether Plaintiff Identified the Alleged Trade Secrets with the Requisite Specificity

First, Defendant urges that Plaintiff has failed to adequately describe the alleged trade secrets for its misappropriation claims "with sufficient clarity to survive a motion to dismiss." (ECF No. 14 at 6–7.) This court has recognized that "[t]he elements to establish a claim for misappropriation of trade secrets are essentially the same under both the Defend Trade Secrets Act and the Wyoming Uniform Trade Secrets Act." *Trial Laws. Coll. v. Gerry Spences Trial Laws. Coll. at Thunderhead Ranch*, 2022 WL 4388478, at *2 (D. Wyo. Sept. 22, 2022) (citing *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178 (D. Kan. 2022) and Wyo. Stat. Ann. § 40-24-101(a)(ii)(A)); *see also Balfour Beatty Infrastructure Inc. v. Am. Track Generations LLC*, 533 F. Supp. 3d 1030, 1035 (D. Wyo. 2020) ("Both sides agree that the elements for trade secret misappropriation under [Wyoming] state law . . . and the DTSA are the same.") A plaintiff must

show the following elements: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means." *Id.* A trade secret under the DTSA is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information", but only if the owner takes "reasonable measures to keep such information secret" and "the information derives independent economic value . . . from [the information] not being generally known to, and not being readily ascertainable through proper means by, another person." 18 U.S.C. § 1839(3)(A)–(B). Similarly, the Wyoming Uniform Trade Secrets Act defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program device, method, technique or process that:
> (A) Derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Wyo. Stat. Ann. § 40-24-101(a)(iv).

In its complaint, Plaintiff alleges that it has "developed trade secrets and other confidential information relating to its business, methods, techniques, processes, personnel, and customers." (ECF No. 1 at 6.) Plaintiff's complaint describes in more detail that it "developed sales scripts, operational processes, advertising strategies, hiring processes, and software (including Customer Relationship Management ("CRM") software and marketing tools)" and that it

> maintains other valuable, non-public information that it also actively treats as trade secrets, such as: the names, addresses, and contact information of the Company's customers and prospective customers, as well as other personal and financial information relating to its customers and prospects; pricing and financial data; nonpublic information about other companies, including current or potential suppliers and vendors; and information related to the Company's methods, services, pricing, costs, margins and mark ups, finances, strategies, business plans,

agreements, decision-making systems, technology, policies, processes, procedures, practices, marketing, sales, techniques, and agent information.

(ECF No. 1 at 6.) Defendant nevertheless argues that these "broad categories of information" which Plaintiff has described in the complaint are insufficiently specific or detailed to plead the existence of a trade secret. (ECF No. 14 at 6–7.) The Court disagrees.

While a complaint alleging a violation of the DTSA must allege "more than conclusory statements that simply restate the elements of a trade secret", to survive a motion to dismiss "the allegations need only specify the general contours of the alleged trade secrets[.]" *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1200 (W.D. Okla. 2019) (internal quotations marks omitted.) Therefore, to withstand a motion brought under Rule 12(b)(6), the Plaintiff "must identify the purported trade secrets, but it may do so generally to avoid publicly disclosing the information in its court filings." *Id.* at 1197 (quoting *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (quotation marks omitted). Furthermore, "the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder[.]" *Id.* at 1198 (quotations omitted). As such, "[c]ourts have only dismissed a claim for lack of specificity on the pleadings in the most extreme cases" and the cases dismissing trade secret claims for lack of specificity are usually at the later stages of litigation—much further along "than the motion to dismiss stage." *SBM Site Servs., LLC v. Garrett*, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012).

Here, Plaintiff has plausibly alleged the general contours of the types of information which may be subject to trade secret protection under the DTSA and WUTSA to survive a 12(b)(6) motion to dismiss. Plaintiff's allegations describing "sales scripts, operational processes, . . . Customer Relationship Management software . . . and marketing tools, pricing and financial data, nonpublic information about . . . current or potential suppliers and vendors; and information related

to the Company's methods, services, . . . finances, strategies, business plans, agreements, [and] techniques" fall under the plain language of "all forms and types of financial, business, . . . [and] technical . . . information" described by the DTSA. 18 U.S.C. § 1839(3)(A)–(B). Certain categories of the described information would also qualify as a "compilation, program device, method, technique or process" under the plain language of the WUTSA. Wyo. Stat. Ann. § 40-24-101(a)(iv).

Furthermore, there is ample case law identifying the specific categories of information alleged in Plaintiff's complaint as the type of information subject to trade secret protection. *ATS Grp., LLC*, 407 F. Supp. 3d at 1197–98 (concluding the complaint could survive a motion to dismiss when plaintiff alleged that the defendant "accessed [plaintiff's] proprietary and confidential electronic data including . . . financial statements, customer lists, and sales records" on a secure computer system); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1080–81 (D. Colo. 2012) (denying a motion to dismiss when plaintiff's alleged trade secrets were "software programs . . . customer lists; pricing templates, [and] vendor lists, . . . among other things."); *Wells Lamont Indus. Grp. LLC*, 2017 WL 3235682, at *3 (holding plaintiff's allegations "sufficient to state a DTSA claim" when the complaint referred to "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports[.]"); *Aggreko, LLC v. Barreto*, 2017 WL 963170, at *2 (D.N.D. Mar. 13, 2017) (agreeing that the plaintiff's allegations were adequate under Fed. R. Civ. P. 8 when the plaintiff described its trade secrets as its "operations, customers, business proposals, pricing strategy, client preference and history, and proprietary pricing models[.]"); *but see Sticky.io, Inc. v. Martingale Software, LLC,* 2021 WL 5508429, at *4 (D. Colo. Oct. 27, 2021), *report and recommendation adopted,* 2021 WL 5759286 (D. Colo. Dec. 3, 2021) (holding that the plaintiff's

"trade secret claim falls into one of those 'extreme cases' where the [c]ourt recommends dismissal for lack of specificity on the pleadings" when the complaint only alleged misappropriation of plaintiff's "proprietary and superior technology.") (internal quotation marks omitted)

Finally, both the DTSA and the WUTSA likewise provide that a trade secret must be subject to reasonable measures to keep such information secret. 18 U.S.C. § 1839(3)(A)–(B); Wyo. Stat. Ann. § 40-24-101(a)(iv). Because a "trade secret must first of all be secret" a Plaintiff must allege "facts suggesting steps taken to keep the information secret." *Garvey v. Face of Beauty LLC*, 2022 U.S. Dist. LEXIS 171182, at \*24 (S.D.N.Y. 2022) (*report & recommendation adopted in Garvey v. Face of Beauty* LLC, 634 F. Supp. 3d 84, 87 (S.D.N.Y. 2022)). Here, the Plaintiff has done that, alleging in the complaint that it has taken reasonable efforts to maintain the secrecy of the alleged trade secrets. Plaintiff states that Credit Sage's

> employees are bound by non-disclosure agreements, confidentiality agreements, and/or the Company's employee handbook, which require the Company's trade secrets and confidential information to be protected. Further, Credit Sage's CRM software, databases, sales sheets, marketing scripts, and marketing platforms are locked down, such that only executive and key employees with a business need to access such information can do so.

(ECF No. 1 at 6–7.) The steps described in the complaint are sufficient to allege that Plaintiff took reasonable measures to protect its alleged trade secrets. Whether the facts ultimately establish that certain trade secrets did not exist, were actually publicly known, or were not subject to reasonable protections cannot be examined or resolved at the 12(b)(6) stage but may only be raised once discovery has concluded. *Balfour II*, 533 F. Supp. 3d at 1034 (Defendant "disputes Plaintiff's allegations that its customer lists are not publicly available information, and the Court cannot resolve such fact disputes at the Rule 12(b)(6) phase.") In short, the Court finds that Plaintiff's allegations contained in the complaint are adequate at this time to allege a plausible claim for relief under the DTSA and the WUTSA.

## 1.2 <u>Whether Plaintiff Adequately Alleged Ownership of the Alleged Trade Secrets</u>

In addition to arguing that Plaintiff has not pled the existence of a trade secret with the requisite specificity, Defendant also argues that Plaintiff has failed to allege that it held rightful ownership of any existing trade secrets. (ECF No. 14 at 9–10.) Plaintiff responds by arguing only that ownership is not a required element under the WUTSA, and that even if it were, Plaintiff has adequately alleged ownership. (ECF No. 29 at 9–10.)

### The Defend Trade Secrets Act

The plain text of the Defend Trade Secrets Act establishes that "[a]n *owner* of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C.A. § 1836(b)(1) (emphasis added). The statute also specifically provides that "the term 'owner', with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed[.]" 18 U.S.C.A. § 1839(4). District Courts within the Tenth Circuit and elsewhere have concluded that the plain language of the DTSA "limits a cause of action under that statute to an owner of a trade secret." *RV Horizons, Inc. v. Smith*, 2020 WL 6701119, at \*24 (D. Colo. Nov. 13, 2020*); Snyder v. Beam Techs., Inc.*, 2023 WL 4136668, at \*5 (D. Colo. June 22, 2023) ("This Court has previously concluded that ownership is a required element of a trade secret misappropriation claim under . . . the DTSA[.]") (internal quotations omitted); *Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, 2019 WL 1434586, at \*4 (W.D. Okla. Mar. 29, 2019) ("In order to plead a claim for violation of the DTSA, a plaintiff must allege that it lawfully owned information . . . . only owners of trade secrets may seek relief under the [DTSA.]"); *Health Care Facilities Partners, LLC v. Diamond*, 2023 WL 3847289, at \*7 (N.D. Ohio June 5, 2023) ("[I]t is incumbent on each DTSA plaintiff to satisfy the plain requirements of

the statute, and that means showing each plaintiff's ownership interest or license."); *Focused Impressions, Inc. v. Sourcing Grp., LLC*, 2020 WL 1892062, at *4 (D. Mass. Apr. 16, 2020) ("Other district courts have also recognized ownership as an essential element of a DTSA claim.") (collecting cases); *Lamont v. Krane*, 2019 WL 2113903, at *3 (N.D. Cal. May 14, 2019) ("To state a DTSA claim, a plaintiff must show that he is the owner or licensee of the alleged trade secret.") Under the DTSA, Plaintiff must plead ownership to state a claim under the Act.

### The Wyoming Uniform Trade Secrets Act

It is less clear, however, whether ownership is an essential element of a Wyoming Uniform Trade Secrets Act claim. The WUTSA was enacted by the Wyoming Legislature in 2006. *AFTG-TG, LLC v. Feature Integration Tech., Inc.*, 2011 WL 13079070, at *3 (D. Wyo. Mar. 17, 2011). Since then, no state-court case—Wyoming Supreme Court or otherwise—has addressed the WUTSA, much less the issue of whether ownership is a required element under the statute. Melvin Jager & Brad Lane, 3 <u>Trade Secrets Law</u> § 69:1. The Wyoming Uniform Trade Secrets Act (Dec. 2023). "Because Wyoming has not directly addressed this issue, this court must make an *Erie*-guess as to how the Wyoming Supreme Court would rule." *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005). In so doing, the Court is "free to consider all resources available, including decisions of Wyoming Courts . . . and the general . . . trend of authority." *Id.* at 901–02 (quoting *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir.2001)).

One Wyoming Supreme Court case addressed the then-state law of trade secrets in 2006, but that case was decided before Wyoming's passage of the WUTSA. In *Briefing.com v. Jones*, 126 P.3d 928, 932 (Wyo. 2006), the Wyoming Supreme Court mentioned ownership with regard to the common law claim of misappropriation of trade secrets while discussing the Restatement (Third) of Unfair Competition, although no in-depth analysis of ownership was made by the court.

*Briefing.com*, 126 P.3d at 932 ("A person to whom a trade secret has been disclosed owes a duty of confidence to the owner of the trade secret" and "an employee or former employee who uses or discloses a trade secret owned by the employer or former employer in breach of a duty of confidence is subject to liability for appropriation of the trade secret under the rule stated in § 40 [of Restatement (Third) of Unfair Competition.]"). However, "Wyoming's trade secret common law was super[s]eded by statute in 2006 when Wyoming enacted its version of the Uniform Trade Secrets Act." *AFTG-TG, LLC*, 2011 WL 13079070, at *3 (dicta). Indeed, the WUTSA specifically provides that "this act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." Wyo. Stat. Ann. § 40-24-107. Therefore, the Wyoming Supreme Court's holding in *Briefing.com* sheds limited light on what that court's approach would be to the ownership element under the WUTSA, because the language of the WUTSA is distinct and supersedes any common law analysis previously made by the Wyoming Supreme Court.

One Tenth Circuit Court of Appeals case, however, offers particularly useful guidance to aid this Court in making its *Erie* guess. In *Gaedeke Holdings VII LTD v. Baker*, 683 F. App'x 677 (10th Cir. 2017) the Tenth Circuit Court of appeals addressed the question of whether evidence of ownership was required for a plaintiff to prevail on a claim for misappropriation of trade secrets under the Oklahoma Uniform Trade Secrets Act. *Gaedeke Holdings VII LTD*, 683 F. App'x at 683 (hereinafter "*Gaedeke*"). "Like many other states, Oklahoma has adopted the Uniform Trade Secrets Act. Okla. Stat. tit. 78, § 85." *Id.* As is the case with the WUTSA, the *Gaedeke* court discussed the language of the Oklahoma Uniform Trade Secrets Act, which likewise provides that it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id.* at 680 (quoting Okla. Stat. tit. 78 § 92(A)).

The Tenth Circuit in *Gaedeke* concluded that ownership was not a required element under the Oklahoma Uniform Trade Secrets Act. First, because "[n]othing in Oklahoma's Act defines ownership of the trade secret as an element of a claim for misappropriation of trade secrets." *Id.* at 683. Although the Oklahoma Court of Civil Appeals had discussed the Oklahoma Uniform Trade Secrets Act, the Tenth Circuit noted that "no court reviewing Oklahoma law has included ownership as an element of a claim for misappropriation of trade secrets." *Id.* Additionally, the Tenth Circuit compared Oklahoma's statute to the Maryland Uniform Trade Secrets Act and noted that the omission of ownership as a required element is "consistent with other states that have adopted similar versions of the Uniform Trade Secrets Act." *Id.* In making its analysis, the Tenth Circuit Court of Appeals also relied on the Uniform Trade Secret Act's commentary from the National Conference of Commissioners. *Id.* at 684. The court concluded that the commendatory suggests that multiple "persons" or "parties" could be entitled to trade secret protection, and that the drafters of the Uniform Trade Secret Act could have use the word "owner" to "limit trade secret protection to owners[.]" *Id.* Finally, the court also noted that other state statutes requiring ownership contained distinct language referring to "owners" which the Oklahoma statute did not contain. *Id.* "Faced with Oklahoma courts repeatedly omitting ownership as an element, the commentary to the Uniform Trade Secrets Act, and distinguishing language in other states' statutes," the Tenth Circuit Court of Appeals saw "no basis to apply a new element for a claim for misappropriation of trade secrets under Oklahoma law." *Id.*

Here, as in *Gaedeke*, the Court's best *Erie* guess is that the Wyoming Supreme Court would not require ownership as an essential element under the WUTSA. First, as in *Gaedeke*, the Court turns to the plain language of the WUTSA. *See also RV Horizons, Inc.*, 2020 WL 6701119, at *24 ("First, this court looks to the language of the statute to determine whether ownership is required.")

In contrast to the DTSA, the WUTSA makes no reference to ownership. *See* Wyo. Stat. Ann. § 40-24-101 *et seq.* Indeed, the language of the WUTSA is nearly identical to the language of the Oklahoma Uniform Trade Secrets Act analyzed in *Gaedeke*, because both states adopted the Uniform Trade Secrets Act. *Compare* Wyo. Stat. Ann. § 40-24-101 *et seq. with* Okla. Stat. Ann. tit. 78, § 86 *et seq.; Gaedeke*, 683 F. App'x at 683 ("Like many other states, Oklahoma has adopted the Uniform Trade Secrets Act."); *AFTG-TG, LLC*, 2011 WL 13079070, at *3 ("Wyoming enacted its version of the Uniform Trade Secrets Act" in 2006).[1] Therefore, like the Oklahoma Uniform Trade Secrets Act analyzed in *Gaedeke*, no element of ownership is included or referenced in the Wyoming Uniform Trade Secrets Act. Wyo. Stat. Ann. § 40-24-101 *et seq.*

In contrast to the Oklahoma Courts mentioned in *Gaedeke* which had not applied ownership as an element of an Oklahoma Uniform Trade Secrets Act claim; no Wyoming state courts have analyzed the elements of the WUTSA at all. *See e.g. Powder River Basin Res. Council v. Wyoming Oil & Gas Conservation Comm'n*, 320 P.3d 222, 231 (Wyo. 2014) (merely mentioning the WUTSA in the context of a Wyoming Public Records Act case); *but see First Interstate BancSystem, Inc. v. Hubert*, 615 F. Supp. 3d 1270, 1282, 1285 (D. Wyo. 2022), *appeal voluntarily dismissed*, 2023 WL 7401141 (10th Cir. Sept. 29, 2023) (dismissing both a DTSA and WUTSA claim against one of the named Defendants, at least in part, because certain alleged trade secrets were not owned by the plaintiff.) Nevertheless, as discussed by the Tenth Circuit in *Gaedeke*, many states which have adopted the language of the Uniform Trade Secrets Act do not require ownership as an essential element, and the commentary to the Uniform Trade Secrets Act indicates that such an element was not intended. *Gaedeke*, 683 F. App'x at 683. Based on the plain language of the

---

[1] The only differences between the two statutes are minor: They include different titling and numbering of paragraphs, cross references to other parts of their respective state codes, and the statute of limitations under the WUTSA is four years rather than the three-year limitation under the Oklahoma version. *Compare* Wyo. Stat. Ann. § 40-24-106 *with* Okla. Stat. Ann. tit. 78, § 91.

WUTSA which omits any mention of ownership, the dearth of Wyoming case law imposing ownership as an element to a WUTSA claim, and the reasoning of the Tenth Circuit Court of Appeals in *Gaedeke* in its discussion of the trend of authority and the substantially similar Oklahoma Uniform Tort Claims Act, this Court makes an *Erie* guess and declines to find that ownership is a required element for a claim brought under the Wyoming Uniform Trade Secrets Act. As such, for the purposes of surviving a motion to dismiss, this court concludes that Plaintiff must plead ownership to state a claim under the DTSA but need to plead ownership as necessary element of a claim under the WUTSA.

The Court also ultimately concludes that Plaintiff adequately pleaded ownership in its complaint. First, throughout the complaint, Credit Sage alleges that the trade secrets listed in the complaint were "proprietary" to Credit Sage. (ECF No. 1 at 9–10.) Specifically, when describing its trade secrets, Plaintiff alleges that it "developed" a Customer Relationship Software, as well as sales scripts, advertising strategies, and marketing tools. (ECF No. 1 at 6.) Plaintiff's allegation that it "developed" these items implies they were proprietary creations by Credit Sage. Plaintiff also describes how it "maintains" contact and financial information for its current and future customers, as well as

> pricing and financial data; nonpublic information about other companies, including current or potential suppliers and vendors; and information related to the Company's methods, services, pricing, costs, margins and mark ups, finances, strategies, business plans, agreements, decision-making systems, technology, policies, processes, procedures, practices, marketing, sales, techniques, and agent information.

(ECF No. 1 at 6–7.) Plaintiff also describes how it works to prevent unauthorized access to this information which it "maintains" in its possession to the exclusion of others. (Id.) Construing these allegations together in the light most favorable to Plaintiff as the nonmoving party, the Court concludes that Plaintiff has plausibly pleaded that it holds ownership to the trade secrets alleged

in the complaint for purposes of stating a claim under the DTSA. *Hall*, 935 F.2d at 1109. As already mentioned above, should evidence come to light during discovery that Plaintiff does not actually have a legal ownership interest in any of the alleged trade secrets, such an issue would be appropriately raised after discovery and not at the motion to dismiss stage of the proceedings. *Balfour II*, 533 F. Supp. 3d at 1034 ("[T]he Court cannot resolve such fact disputes at the Rule 12(b)(6) phase.").

### 1.3 Whether Plaintiff Adequately Alleged that Defendant Misappropriated the Alleged Trade Secrets

Next, Defendant asserts that even if the court finds that Plaintiff has plead the existence and its ownership of a trade secret with requisite specificity, Plaintiff has still failed to allege Defendant has misappropriated any trade secret. (ECF No. 14 at 10–13.) Under the DTSA, "misappropriation is the acquisition, disclosure or use of a trade secret with knowledge or reason to know it is unauthorized." *Id.* (citing 18 U.S.C. § 1839(5)). Such misappropriation may be accomplished using "improper means to acquire knowledge of the trade secret," or "derived from or through a person who had used improper means to acquire the trade secret," or acquired from or through someone "under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret," or through "accident or mistake." 18 U.S.C. § 1839(5). Similarly, the WUTSA defines misappropriation as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Wyo. Stat. Ann. § 40-24-101(a)(ii)(A). Those improper means may include "theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy or espionage through electronic or other means" or acquisition "under circumstances . . . or from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." *Id.* at (a)(i) and (a)(ii)(B).

The parties spill much ink debating with what specificity Plaintiff must plead Defendant's alleged misappropriation. Two opinions from a single case filed in this District and cited by the parties helps in resolving this dispute. In *Balfour Beatty Infrastructure Inc. v. Am. Track Generations LLC*, 2020 WL 13049359 (D. Wyo. June 22, 2020) (hereinafter *Balfour I*), this Court dismissed the plaintiff's complaint without prejudice for failure to "plausibly allege Defendants misappropriated trade secrets." *Id.* at *4. The complaint in *Balfour I* alleged that that two of the plaintiff's "former high-level employees went to work for a competitor and were followed, preceded, or joined by approximately 65 other former employees" as part of a scheme to take plaintiff's business. *Id.* at 5. However, the complaint included no "factual allegations to support these conclusory statements of use or disclosure of trade secrets. They show nothing 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *AFTG-TG, LLC*, 2011 WL 13079070, at *3. This was because the complaint only stated, "on information and belief" that one defendant "used [plaintiff's] confidential business information when arranging for his subordinates to leave [plaintiff's business] and join [defendant's business]." *Id.* at *4.

The court in *Balfour I* noted that confidential business information was not necessarily a trade secret. *Id.* Secondly, the court held that "Plaintiff must nonetheless allege some facts to support that [plaintiff's former employees] took trade secrets with them, used them on behalf of [defendant's business], or otherwise disclosed them to [defendant's business]." *Id.* Third, the plaintiff made no allegations that the defendant's business had knowledge or reason to know that any information brought to it by plaintiff's former employees were trade secrets. *Id.* As such, the court in *Balfour I* dismissed the plaintiff's complaint but granted plaintiff leave to amend the complaint. *Id.* at *6.

The plaintiff thereafter amended and refiled its complaint, which was at issue in *Balfour Beatty Infrastructure Inc. v. Am. Track Generations LLC*, 533 F. Supp. 3d 1030 (D. Wyo. 2020) ("*Balfour II*"). Once again, defendants in *Balfour II* filed a motion to dismiss, arguing that the amended complaint failed to state a DTSA claim for failing to adequately allege the existence of trade secrets or defendants' misappropriation of said secrets. *Id.* at 1034. In the complaint filed in *Balfour II*, however, the plaintiff added "factual allegations to plausibly support that [defendant] used the trade secrets that [plaintiff's former employees] allegedly brought with them from [plaintiff's business]." *Id.* at 1035. For example, plaintiff added detail about the plaintiff's former employees taking customer lists which were not publicly available information, among other trade secrets. *Id.* at 1034. Ultimately, the court in *Balfour II* concluded "[g]iving reasonable inferences, Plaintiff's fact allegations plausibly support that [plaintiff's former employees] obtained and took from Plaintiff not just experience and professional knowledge, but also specific information regarding Plaintiff's business that Plaintiff had maintained as trade secret." *Id.* As such, the court held that plaintiff's "DTSA claim as now pleaded states a claim." *Id.*

Here, the Court is satisfied, after taking all inferences in Plaintiff's favor, the complaint has adequately stated a claim for misappropriation of trade secrets under both the DTSA and the WUTSA. First, as discussed at great length above, Plaintiff adequately pleaded the existence of certain trade secrets which it owned. In the complaint, Plaintiff also asserts that its employees were bound by a "non-disclosure agreement, confidentiality agreements, and or/the Company's employee handbook, which require the Company's trade secrets and confidential information to be protected" and that "Credit Sage's CRM software, databases, sales sheets, marketing scripts, and marketing platforms are locked down, such that only executive and key employees with a business need to access such information can do so." (ECF No. 1 at 7.) According to the complaint,

the employees given this limited access to these trade secrets included Zajpt, Copley, and Belfhadfa in their respective roles at Credit Sage. (Id.) Making all reasonable inferences in Plaintiff's favor, these allegations establish that the circumstances at Credit Sage gave "rise to a duty" by Zajpt, Copley, and Belfhadfa "to maintain the secrecy of the trade secret or limit the use of the trade secret" and that these three individuals would have known or had reason to know that taking said trade secrets to a competing company constituted a breach of duty to maintain secrecy and avoid acquisition by improper means. 18 U.S.C. § 1839(5); Wyo. Stat. Ann. § 40-24-101(a)(ii)(A)–(B).

Plaintiff also alleges that through Zajpt, Copley, and Belfhadfa's actions, Defendant has "acquired and unlawfully used and disclosed Credit Sage's trade secrets." (ECF No. 1 at 9.) Plaintiff alleges that "[a]s one specific example, Zajpt exported the [Credit Sage's] entire customer database, including all of its customers' personal and credit information, which he has refused to return to Credit Sage." (Id.) Plaintiff also asserts that "it appears that Credit Wellness is using Credit Sage's sales scripts, operational processes, hiring processes, software, and advertising strategies and advertisements." (Id. at 8.) As a result, Plaintiff asserts that Defendant's business is essentially a "carbon copy" of Credit Sage. (Id.) As in *Balfour II*, after giving Plaintiff all reasonable inferences, Plaintiff's fact allegations plausibly support that Zajpt, Copley, and Belfhadfa improperly took from Plaintiff specific information regarding Plaintiff's business that Plaintiff has maintained as a trade secret and that Defendant is using that information to Plaintiff's detriment. *Balfour II*, 533 F. Supp. 3d at 1034–35. In sum, Plaintiff has adequately plead a claim for misappropriation of trade secrets under both the Federal Defend Trade Secrets Act and the Wyoming Uniform Trade Secrets Act (Claims I and II) and Defendant's request to dismiss both of those claims must be denied.

**2.  Whether Plaintiff May Assert a Claim for Aiding and Abetting the Misappropriation of a Trade Secret**

In its last argument under its 12(b)(6) motion to dismiss, Defendant contends that "aiding and abetting misappropriation of trade secrets" (Claim III) is not a private cause of action recognized under federal law. (ECF No. 14 at 13.) The Court agrees.

**2.1  Aiding and Abetting and the DTSA**

Pursuant to the passage of the Economic Espionage Act of 1996, 18 U.S.C. § 1831 *et seq.*, Congress made the theft of trade secrets and conspiracies to steal trade secrets federal crimes. 18 U.S.C. § 1832(a)(1)–(5). No private right of action to bring a civil claim for theft of trade secrets was authorized under the Economic Espionage Act. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842 (E.D. Va. 2017). Twenty years later in 2016, Congress passed the Defend Trade Secrets Act which amended the Economic Espionage Act to provide a private right of action under certain circumstances. *Id.* at 841; *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021). Neither relevant provision of the federal criminal or civil statute, 18 U.S.C. § 1832(a) or § 1836(b), mention aiding and abetting. *Power Home Solar, LLC*, 2021 WL 3856459, at *10. Plaintiff in this case nevertheless contends that criminal defendants in other districts have been charged with the crime of aiding and abetting theft of trade secrets on a number of occasions under § 1832(a), and therefore, "it stands to reason that such an action may likewise be brought under civil proceedings under the DTSA." (ECF No. 29 at 12.)

However, criminal statutes enacted by Congress which do not provide for a private right of action are "not enforceable through a civil action." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Power Home Solar, LLC*, 2021 WL 3856459, at *10 ("When Congress establishes a crime, Congress must also provide a private right of action for citizens to enforce the criminal statute through civil actions."). Therefore, even accepting as true Plaintiff's contention

that certain criminal defendants have been charged with the crime of aiding and abetting theft of trade secrets under § 1832(a)—despite the absence of said crime in language of the criminal statute[2]—this fact cannot mean that Congress has authorized a civil private right of action for the same conduct under § 1836(b). *See Power Home Solar, LLC*, 2021 WL 3856459, at *10 ("Congress neither established a crime for 'aiding and abetting' the theft of trade secrets nor created a private cause of action to enforce such a provision."). Absent Congress' express provision to create a private right of action for aiding and abetting the misappropriation of trade secrets under the DTSA, this court cannot create such a private right of action *sua sponte. Id.* ("Holding otherwise would read into the statute an additional private right of action that Congress never expressly provided."). Accordingly, Defendant's request to dismiss Plaintiff's federal claim for misappropriation of trade secrets as part of Claim III in the complaint is granted.

## 2.2 Aiding and Abetting and the WUTSA

Defendant only moves to dismiss Plaintiff's claim for aiding and abetting under the federal DTSA, leading Plaintiff to argue that "[a]iding and abetting misappropriation of trade secrets is . . . cognizable [Wyoming] state law, which Defendant does not contest." (ECF No. 29 at 12.) In so arguing, Plaintiff asserts that Wyoming law recognizes liability for aiding and abetting generally. (ECF No. 29 at 12–13.) However, while Plaintiff is correct that "Wyoming currently recognizes some aiding and abetting claims" it is not difficult for the court to make an *Erie* guess that a claim for aiding and abetting misappropriation of trade secrets is nevertheless not one of the aiding and abetting claims cognizable under Wyoming law. *See Pehle*, 397 F.3d at 901; *Quest Holdco, LLC v. Bushkie*, 2021 WL 7210165, at *3 (D. Wyo. July 19, 2021) ("In an area of unsettled law, the

---

[2] While 18 U.S.C. § 1832(a) lacks specific reference to aiding or abetting, the authority for someone to be criminally charge by the United States for aiding or abetting is based upon 18 U.S.C. §2, which is limited to offenses against the United States.

Court may attempt to predict how the forum state's highest court would interpret the issue."). This court has noted that the Wyoming Supreme Court has allowed claims for "aiding and abetting *wrongful* acts of others." *Christian v. Loyakk, Inc.*, 650 F. Supp. 3d 1242, 1268 (D. Wyo. 2023) (emphasis in original) (citing *Gas Sensing Tech. Corp. v. New Horizon Ventures Pty Ltd as Tr. of Linklater Family Tr.*, 471 P.3d 294, 298 (Wyo. 2020) and *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 479 P.3d 1222, 1229 (Wyo. 2021)). However, "[c]ivil claims for wrongful acts are by definition limited to torts*." Quest Holdco, LLC*, 2021 WL 7210165, at *3.

Accordingly, "when assessing potential aiding and abetting claims, Wyoming courts fall back on the common law" as adopted by the Wyoming State Legislature. *Christian*, 650 F. Supp. 3d at 1268; Wyo. Stat. Ann. § 8-1-101. In Wyoming, the common law is "'the rule of decision in this state when not inconsistent with the laws thereof,' and 'of full force until repealed by legislative authority.'" *Howard v. Aspen Way Enterprises, Inc.*, 406 P.3d 1271, 1276 (Wyo. 2017) (quoting Wyo. Stat. Ann. § 8-1-101.) Therefore, in determining whether a new claim is actionable, the "salient question . . . is "not whether the Wyoming Supreme Court has 'adopted' the tort in question, but rather whether the tort has been repealed by statute or is otherwise inconsistent with Wyoming law—that is, whether the tort is part of Wyoming's common law." *Christian*, 650 F. Supp. 3d at 1268 (quoting *Howard*, 406 P.3d at 1276).

For example, in *Quest Holdco, LLC v. Bushkie*, 2021 WL 7210165 (D. Wyo. July 19, 2021), this Court made an *Erie* guess as to whether the Wyoming Supreme Court would recognize a claim for aiding and abetting fraud. *Id.* at 3. The court noted that Wyoming recognizes some aiding and abetting claims, and that aiding and abetting fraud is a common law tort claim. *Id.* The court concluded that because "Wyoming's statutory scheme is silent on the matter", then the Wyoming State Legislature had "not repealed the common law claim of aiding and abetting fraud."

*Id.* Therefore, the court allowed the plaintiff's aiding and abetting fraud claim to proceed, because such a claim "has not been repealed by the Wyoming State Legislature and it is not inconsistent with existing Wyoming law." *Id.*

Here, in contrast to the claim brought in *Quest*, the Wyoming State Legislature explicitly repealed misappropriation of trade secrets from Wyoming's common law of torts, rendering any aiding and abetting claim inconsistent with the existing exclusive remedies of the WUTSA. As already discussed above, "Wyoming's trade secret common law was super[s]eded by statute in 2006 when Wyoming enacted its version of the Uniform Trade Secrets Act." *AFTG-TG, LLC,* 2011 WL 13079070, at \*3 (dicta). The WUTSA specifically provides that "this act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret." Wyo. Stat. Ann. § 40-24-107. When it enacted the WUTSA the Wyoming Legislature expressly and explicitly repealed any common law tort claim for misappropriation of trade secrets and established an exclusive statutory civil remedy for misappropriation of trade secrets. The text of the WUTSA makes no provision for an aiding and abetting misappropriation of trade secrets claim. See Wyo. Stat. Ann. § 40-24-101 *et seq*. Thus, a claim for aiding and abetting misappropriation of trade secrets would be inconsistent with Wyoming law.

For these reasons, the court makes an *Erie* guess that the Wyoming Supreme Court would find that the WUTSA is Plaintiff's sole available remedy under Wyoming Law for a misappropriation of trade secrets claim. A claim for aiding and abetting the misappropriation of trade secrets is inconsistent with the exclusive remedies the Wyoming Legislature has provided under the statute. As such, Plaintiff's Claim III, for aiding and abetting misappropriation of trade secrets under the DTSA and WUTSA must be dismissed.

### 3. **Defendant's Rule 12(b)(1) Supplemental Jurisdiction Arguments**

Because all but one of Plaintiff's federal claims under the Defend Trade Secrets Act survive Defendant's Rule 12(b)(6) motion (all except aiding and abetting under the DTSA), there is no impediment to the court's exercise of supplemental pendant jurisdiction over Plaintiff's remaining state law claims. Defendant's Rule 12(b)(1) motion to dismiss must therefore be denied.

### 4. **Defendant's Rule 12(b)(7) Arguments**

Finally, Defendant requests that the court dismiss Claims III–VI of Plaintiff's amended complaint on the basis that those claims would require the court to "adjudicate an alleged agreement between Jiri Zajpt, Adam Copley, Tina Belfhadfa, and Plaintiff" but that Zajpt, Copley, and Belfhadfa are indispensable parties which have not been joined to this case. (ECF No. 14 at 15–20.) Plaintiff argues in its opposition that Zajpt, Copley, and Belfhadfa are neither required nor indispensable parties to this litigation. (ECF No. 29 at 13–20.)

"In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true and draw all inferences in favor of the non-moving party.*" Leago,* 2021 WL 1192939, at *7; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2014 WL 1016072, at *2. However, the court is not limited to the allegations of the Complaint because "[t]he proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band of Potawatomi Indian Tribe of Okla.*, 17 F.3d at 1293. A movant may attempt to satisfy its burden "by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.* (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1359 (1990)) (internal quotations omitted).

**4.1  Whether Zajpt, Copley, and Belfhadfa are "Necessary" or "Required" Parties**

At the first step of the Rule 12(b)(7) analysis, *Defendant* is required to show that Zajpt,

Copley, and Belfhadfa are "necessary" or "required" parties under Federal Rule of Civil

Procedure 19(a). A person is a "required" party under Rule 19(a) when:

> (A)  in that person's absence, the court cannot accord complete relief
> among existing parties; or
> (B)  that person claims an interest relating to the subject of the action and
> is so situated that disposing of the action in the person's absence
> may:
>> (i)  as a practical matter impair or impede the person's ability to
>> protect the interest; or
>> (ii)  leave an existing party subject to a substantial risk of
>> incurring double, multiple, or otherwise inconsistent
>> obligations because of the interest.

Fed. R. Civ. P. 19(a)(1); *see also Alulis v. Container Store, Inc.*, 2020 WL 2556946 at 5–6 (E.D.

Penn. May 20, 2020) (party raising defense of failure to join indispensable party has burden to

show party not joined is needed for just adjudication). Defendant argues that a judgment on the

merits against it for Claims IV, V, and VI of the complaint would require the court to find: (1) that

a valid contract existed between Zajpt, Copley, Belfhadfa, and Credit Sage in order to find

Defendant liable for tortious interference with a contract, business expectancy, and prospective

economic advantage (Count V); (2) that Zajpt, Copley, Belfhadfa had a fiduciary duty which was

breached in order to find Defendant liable for "aiding and abetting breach of fiduciary duty,"

(Count IV); and (3) that there was a meeting of a minds between Credit Wellness, Zajpt, Copley,

and Belfhadfa to form a civil conspiracy (Count VI). (ECF No. 14 at 16–17.) Defendant argues

that the Court cannot make these determinations, and therefore, cannot afford complete relief,

without Zajpt, Copley, Belfhadfa being joined to this action, and that each of "these individuals'

interest[s] will be significantly impaired if there is an adjudication on the merits, as such a

judgment in this action could be legally binding against them in a future suit." (ECF No. 14 at 17.)

First, "the fact that the absent person may be bound by the judgment does not of itself require his joinder if his interests are fully represented by parties present" particularly if the absent party's interest is adequately represented in the suit by an existing party. *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407 (10th Cir. 1996); *United States v. Water Supply & Storage Co.*, 2023 WL 7924736, at *4 (D. Colo. Nov. 16, 2023) ("An absent party with an interest in the action is not a necessary party under Rule 19(a) if the absent party is adequately represented in the suit") (internal quotations omitted). For example, the doctrine of collateral estoppel or "issue preclusion" would only bind Zajpt, Copley, and Belfhadfa if in the future litigation a court determined that:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009). Courts, however, have declined to guess as to the preclusive effect of future litigation against non-parties in determining whether those non-parties are necessary. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993) (declining to "theorize in determining necessary party status about the potential preclusive effect of this action on a later lawsuit as this would be premature."); *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132 (1st Cir. 1989) ("The mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party."); *Salton, Inc. v. Philips Domestic Appliances & Personal Care B. V.*, 391 F.3d 871, 880 (7th Cir. 2004) ("Just as in the closely related case of joint tortfeasors, there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract.").

Likewise, this Court need not speculate as to whether the elements for collateral estoppel would be met in a future hypothetical litigation or whether Credit Wellness will adequately represent Zajpt, Copley, and Belfhadfa's interests regarding Claims IV, V, and VI of the complaint. Instead, the Court finds that Plaintiff's request for injunctive relief regarding its claim for "breach of fiduciary duty" and "tortious interference with a contract claim" renders Zajpt, Copley, and Belfhadfa necessary parties because Plaintiff receiving said relief could impair or impede the absent parties' ability to protect their concrete, non-hypothetical interest in their employment with or ownership in Credit Wellness.

The court in *XPO Logistics, Inc. v. Gallatin*, 2013 WL 3835358 (N.D. Ill. July 24, 2013) faced a similar set of facts as in this case. In that case several employees of the plaintiffs went to work for a competitor, despite having signed "an agreement containing non-competition, nonsolicitation, and confidentiality provisions that survived the termination of [their] employment" and which "prohibited them from disclosing plaintiffs' confidential information and competing with plaintiffs' business[.]" *Id.* at *1–2. The plaintiffs subsequently sued their competitor for tortious interference with a contract, aiding and abetting the breach of a duty of loyalty, violating the Michigan Uniform Trade Secrets Act, and engaging in unfair competition. *Id.* at 1. The competitor brought a motion to dismiss pursuant to Rule 12(b)(7), arguing that the complaint should be dismissed for failure to join the other former employees of the plaintiffs, who it argued were necessary parties. *Id.*

The court in *XPO Logistics, Inc.* noted that "the existence of a valid and enforceable agreement" between the Plaintiffs' and its former employees was "a required element of plaintiffs' tortious interference with contract claim, but that "this alone does not make the former employees necessary parties." *Id.* at *3. Additionally, the court concluded that it did not need to have the

absentee former employees "before it to adjudicate whether [the competitor] aided or abetted their alleged breach of duty of loyalty." *Id.* What changed the calculus, however, was that plaintiffs were seeking an injunction against the competitor to prevent it "from soliciting plaintiffs' customers through any former [plaintiffs'] employee." *Id.* at *4. The court concluded that such an injunction "could have an effect on the absent former . . . employees [of Plaintiffs] and impede their ability to protect their interests." *Id.* "Were plaintiffs only seeking monetary damages or relief that would not interfere with the former employees' relationship with defendants, the result might be different." *Id.* Instead, "if one court found the agreements enforceable and the other not, the absent parties could both be allowed to solicit and be prohibited from soliciting plaintiffs' former customers on behalf of [the competitor.]" *Id.* "This," the court concluded, "makes them necessary parties." *Id.*

Here, with regard to its claims against Defendant for tortious interference with a contract and aiding and abetting breach of fiduciary duty, Plaintiff alleges that Zajpt and Copley signed Credit Sage's "Operating Agreement" which imposes fiduciary duties. (ECF No. 1 at 5.) The Operating Agreement provides that "[e]xcept to the extent otherwise provided herein, each Member shall have a fiduciary duty of loyalty and care similar to that of members of limited liability companies organized under the laws of Delaware." (ECF No. 1 at 5.) According to Plaintiff, the Operating Agreement also states that "[t]he Members shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto." (Id.) Plaintiff further alleges that "As Operations and Sales Lead, Belfhada [sic] also owed fiduciary duties to Credit Sage, according to statutory and common law." (Id.) Finally, Plaintiff alleges that no "vote ever occurred regarding whether [Zajpt, Copley, and Belfhadfa] would be permitted to compete against the

Company on behalf of, and through, Credit Wellness." (Id. at 8.) Like the plaintiffs in *XPO Logistics, Inc.*, Plaintiff in this case does not merely request monetary damages in the complaint, but also requests that the court issue:

> injunctive relief to prevent Credit Wellness from using Credit Sage's trade secrets; benefitting via its unlawful competition with Credit Sage; aiding and abetting the breaches of fiduciary duties committed by two of Credit Sage's member managers and one of its former key employees; tortiously interfering with Credit Sage's Operating Agreement; and conspiring to unlawfully compete with Credit Sage.

ECF No. 1 at 16.

As in *XPO Logistics, Inc.*, if Credit Wellness is found liable for tortious interference with a contract or aiding and abetting Zajpt, Copley, and Belfhadfa in their breach of fiduciary duty, a finding of fact would need to be made that Zajpt, Copley, and Belfhadfa had a valid contract with Credit Sage and that they breached their fiduciary duty in violation of the Operating Agreement, the common law, or both. Like the discussion in *XPO Logistics, Inc.*, this Court is also satisfied that the presence of Zajpt, Copley, and Belfhadfa is not necessary to adjudicate whether Defendant tortiously interfered with any contract between Credit Sage and Zajpt, Copley, and Belfhadfa or to adjudicate whether Defendant aided or abetted their alleged breach of fiduciary duty. Nevertheless, if Plaintiff's requested injunctive relief were entered against Credit Wellness, then the practical effect against Zajpt, Copley, and Belfhadfa would be equivalent to an injunction against them from working for Credit Wellness. Such an injunction against Credit Wellness would prohibit it from continuing to work with Zajpt, Copley, and Belfhadfa because in so doing, Zajpt, Copley, and Belfhadfa would be breaching their "fiduciary duty of loyalty and care" and would be "competing with [Credit Sage] in the conduct of [Credit Sage's] business" in violation of their fiduciary duties under the operating agreement or the common law. (*See* ECF No. 1 at 5.) Therefore, similar to the court's analysis *XPO Logistics, Inc.*, an injunction against Credit Wellness

could have the practical effect of enjoining Zajpt, Copley, and Belfhadfa from working with Credit Wellness. At the same time, in any future litigation against Zajpt, Copley, and Belfhadfa for breach of contract or breach of fiduciary duties, a different court could contradictorily conclude that no contract or fiduciary duty prevented Zajpt, Copley, and Belfhadfa from working with Credit Wellness. Therefore, just as in *XPO Logistics, Inc.*, Plaintiff's request for injunctive relief against Credit Wellness could impair or impede Zajpt, Copley, and Belfhadfa's ability to protect their interest of working for Credit Wellness, and could subject Credit Wellness, an existing party, to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of Zajpt, Copley, and Belfhadfa's interest. Defendant therefore has met its burden to that Zajpt, Copley, and Belfhadfa are necessary parties. However, that is not the end of the story.

### 4.2  Whether Joinder of Zajpt, Copley, and Belfhadfa is Feasible

Even if Zajpt, Copley, and Belfhadfa are necessary parties, Defendant has failed in its burden to show either that Zajpt, Copley, and Belfhadfa can feasibly be joined (thereby requiring their joinder) or that they cannot be feasibly joined (thereby requiring the court to proceed to the indispensability analysis). Defendant argues that Zajpt, Copley, and Belfhadfa can be feasibly joined through service under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, but Plaintiff argues that their joinder is not feasible because this court lacks personal jurisdiction over Zajpt, Copley, and Belfhadfa. (ECF No. 14 at 17–18; ECF No. 29 at 18–19.)

If a party is necessary, before proceeding to the question of indispensability, a court must determine whether joinder of the necessary party is "feasible." *Davis ex rel. Davis*, 343 F.3d at 1289; *see also Alulis*, 2020 WL 2556946 at 5–6. The language of Rule 19(a)(1) is mandatory that a necessary party "who is subject to service of process and whose joinder will not deprive the court

of subject-matter jurisdiction *must* be joined as a party[.]" Fed. R. Civ. P. 19(a)(1) (emphasis added). However, if the court concludes that a necessary party cannot feasibly joined, the court must then proceed to the indispensability analysis, which asks "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, because the absent person . . . is indispensable to the litigation at hand." *Davis ex rel. Davis*, 343 F.3d at 1289. The Advisory Committee Notes to Rule 19 explains that infeasibility of joinder "may be encountered in Federal courts because of limitations on service of process, subject matter jurisdiction, and venue[.]" Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment. However, these factors are not exclusive, and the Tenth Circuit Court of Appeals and other courts within this circuit have found joinder of a party is not feasible for additional reasons such as the sovereign immunity of the absent party or lack of personal jurisdiction over the absent party. *See N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1281–82 (10th Cir. 2012) (holding that joinder of a Native American tribe was not feasible because of the tribe's sovereign immunity); *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 918 (D. Kan. 2007) (finding that it was not feasible to join an absent party because the court lacked personal jurisdiction over the absent party).

Here, because the Plaintiff's cause of action is predicated on federal question jurisdiction, there is no concern that joining Zajpt, Copley, and Belfhadfa would defeat the court's subject matter jurisdiction. Nor have any of these three individuals appeared and voiced any objection to venue in this forum. Nevertheless, Defendant has not met its burden to show the feasibility or infeasibility of joining Zajpt, Copley, and Belfhadfa due to ambiguities in personal jurisdiction and service of process.

Courts have routinely held that lack of personal jurisdiction over an absent party is a bar to the feasibility of joining said party. *Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*, 889 F.3d

30 (1st Cir. 2018) (Rule 19 distinguishes between two types of absentees: 'those whose joinder is feasible and those whose joinder is not feasible, because it would defeat subject-matter jurisdiction, or the absentee is beyond the personal jurisdiction of the court, or the absentee has and makes a valid objection to venue.'") (quoting *Askew v. Sheriff of Cook Cty, Ill.*, 568 F.3d 632, 634–35 (7th Cir. 2009)); *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (stating that "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."); *XPO Logistics, Inc.*, 2013 WL 3835358, at *4 (finding joinder not feasible when the absent parties "are not subject to personal jurisdiction in this district"); *Thompson*, 505 F. Supp. 2d at 918 (same).

However, cutely, Defendant offers no evidence of this Court's personal jurisdiction over Zajpt, Copley, or Belfhadfa. The complaint alleges that Zajpt is a citizen and resident of the Czech Republic, and that Copley is a citizen of the United Kingdom but resides in Portugal. (ECF No. 1 at 4.) Defendant does not contest these allegations and instead only argues that joinder of Zajpt and Copley must be feasible because both the Czech Republic and Portugal are signatories of the "Hague Convention." (ECF No. 14 at 18.) While there are many Hague Conventions, the court presumes that Defendant is referring to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents (T.I.A.S. No. 6638) (hereinafter "the Hague Service Convention.").[3] Federal Rule of Civil Procedure 4(f) provides that an individual "may be served at a place not within any judicial district of the United States: (1) by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on

---

[3] Indeed, the treaty to which Defendant cites is the Hague Convention on "International Child Abduction (T.I.A.S. No. 11670) rather than the Hague Convention on "Service Abroad of Judicial and Extrajudicial Documents (T.I.A.S. No. 6638).

the Service Abroad of Judicial and Extrajudicial Documents[.]" Fed. R. Civ. P. 4(f). Defendant is correct that both the Czech Republic and Portugal are contracting parties to the Hague Service Convention—Portugal as a signatory and by ratifying the convention, and the Czech Republic by succession. (https://www.hcch.net/en/instruments/conventions/status-table/?cid=17) (last visited January 6, 2024). However, even if service were to be executed under the Hague Evidence Convention, Defendant has not cited any affidavits or "other relevant extra-pleading evidence" to show that this Court can exercise personal jurisdiction over Zajpt and Copley. *See Citizen Band of Potawatomi Indian Tribe of Okla.*, 17 F.3d at 1293.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). In this way, "service of summons is the *procedure* by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served", but there must also be "a *constitutionally sufficient relationship* between the defendant and the forum." *Id.* (emphasis added) In this way, service of summons is a "prerequisite for the exercise of personal jurisdiction." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017). But "effective service under [Fed. R. Civ. Pro. 4] does not assure that personal jurisdiction has been established over the defendant served." 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1063 (4th ed. 2023) (citing Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment).

Accordingly, in assessing personal jurisdiction and service through the Hague Service Convention, the Tenth Circuit has analyzed whether a party's alleged contacts are sufficient to confer personal jurisdiction and then whether service of process has been properly made through the Hague Service Convention. *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos*

*de Chihuahua S.A.B. de C.V.,* 970 F.3d 1269, 1284, 1292–93 (10th Cir. 2020) (first assessing whether the defendant's contacts were adequate to confer personal jurisdiction before analyzing whether defendant was properly served under the Hague Service Convention.) Therefore, in determining whether joinder of Zajpt and Copley is feasible, Defendant must still show some basis upon which this Court may exercise personal jurisdiction over Zajpt and Copley before the Court's jurisdiction can be asserted through the Hague Service Convention. Ultimately, there is no point in going to the trouble of serving an absentee party through the Hague Service Convention if this Court ultimately lacks personal jurisdiction over that party.

Likewise, in deciding whether a federal court may exercise personal jurisdiction over a party, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams,* 465 F.3d 1210, 1217 (10th Cir. 2006). "Because DTSA 'does not have a special federal rule for personal jurisdiction,' the court must "look to the law of the forum for the governing rule.'" *Edelman Fin. Engines, LLC v. Gutowksi,* 2020 WL 6157867, at *1 (D. Kan. Oct. 21, 2020). Wyoming's long-arm statute confers jurisdiction 'on any basis not inconsistent with the Wyoming or United States constitution,'" therefore, the "'statute extends state court jurisdiction in Wyoming to the constitutionally permissible limit.'" *Eighteen Seventy, LP v. Jayson,* 32 F.4th 956 (10th Cir. 2022) (quoting Wyo. Stat. Ann. § 5-1-107(a); *Shanks v. Westland Equip. and Parts Co.,* 668 F.2d 1165, 1167 (10th Cir. 1982)). "Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend traditional notions of fair play and substantial justice." *Zvelo, Inc. v. Check Point Software Techs., Ltd.,* 418 F. Supp. 3d 664, 668 (D. Colo. 2019) (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)).

The "minimum contacts" showing as established by *Intl Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) may be accomplished under either "the doctrines of general jurisdiction or specific jurisdiction." *Id.* A court may exercise specific personal jurisdiction after a finding that a party "'purposefully directed' their activities towards forum residents, and the plaintiff's injuries arose from those activities." *Edelman Fin. Engines, LLC*, 2020 WL 6157867 (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013)). "General jurisdiction lies when the defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996).

Here, however, Defendant does not argue or provide evidence that Zajpt, Copley, or Belfhadfa have minimum contacts with Wyoming to be subjected to either the specific or general personal jurisdiction of this Court. Plaintiff alleges in the complaint that this Court has personal jurisdiction over Defendant Credit Wellness because it "is a Wyoming limited liability company." (ECF No. 1 at 4.) The complaint, however, is light on specific allegations regarding Zajpt, Copley, and Belfhadfa's contacts with Wyoming. This is understandable given that Plaintiff did not name them as defendants. However, the complaint does allege that "[u]pon information and belief, Zajpt and Copley are the principals behind Credit Wellness, and Belfhadfa is assisting its operations." (ECF No. 1 at 8.) Nevertheless, the Court cannot exercise jurisdiction over Zajpt or Copley based merely on their alleged membership or ownership interest in Credit Wellness—a Wyoming LLC. "[A]n LLC is 'at home' in its state of organization, and is therefore subject to general personal jurisdiction within that state consistent with the Due Process Clause." *Avus Designs, Inc. v. Grexx, LLC*, 644 F. Supp. 3d 963, 978 (D. Wyo. 2022) (citing *Daimler AG v. Bauman*, 571 U.S. 117, at 139 (2014)). However, unfortunately "[p]ersonal jurisdiction over a limited liability company does

not automatically extend to its members, as membership in an LLC is not sufficient in-and-of itself

to confer personal jurisdiction over its members." *V-E2, LLC v. Callbutton, LLC*, 2012 U.S. Dist.

LEXIS 174633, at *8–9 (W.D.N.C. Dec. 8, 2012); *Mountain FUnding, LLC v. Blackwater

Crossing, LLC*, 2006 WL 1582403, at *2 (W.D.N.C. June 5, 2006) (same); *Lopes v. JetsetDC,

LLC*, 994 F. Supp. 2d 135, 146 (D.D.C. 2014) ("Generally, courts do not have jurisdiction over

individual officers and employees of a corporation just because the court has jurisdiction over the

corporation . . . . This rule applies to LLCs.") (internal quotations omitted). "Instead, the members

must have the requisite minimum contacts with the forum state independently of the limited

liability company." *Mountain FUnding, LLC*, 2006 WL 1582403, at *2.

Defendant has also failed to provide any additional evidence regarding Zajpt, Copley's, or

Belfhadfa's specific minimum contacts with Wyoming, or even their membership in Credit

Wellness, LLC. Indeed, Defendant has steadfastly concealed its membership during this litigation

despite the Court's express orders. On August 7, 2023, this Court ordered that "[g]iven the nature

of the allegations and claims in the *Complaint* (ECF No. 1) and the jurisdictional issues raised in

the Motion to Dismiss" the parties were to "to disclose the names and citizenship of their respective

members." (ECF No. 21 at 1.) However, rather than comply with the Court's order to disclose the

full names and citizenship of all its members, Credit Wellness merely disclosed that it was "wholly

owned by Global Business Resources, LLC, a Wyoming limited liability company." (ECF No. 26

at 1.) This is inadequate.  Generally, "federal courts must include all the entities' members when

determining citizenship" of an LLC. *Mgmt. Nominees, Inc. v. Alderney Invs.*, LLC, 813 F.3d 1321

(10th Cir. 2016); *but see Avus Designs, Inc.*, 644 F. Supp. 3d at 978 (holding that "an LLC is 'at

home' in its state of organization, and is therefore subject to general personal jurisdiction within

that state consistent with the Due Process Clause.") "[W]hen an entity is comprised of multiple

layers of constituent entities, the citizenship determination requires an exploration of the citizenship of the constituent entities as far down as necessary to unravel fully the citizenship of the entity before the court." *U.S. Advisor, LLC v. Berkshire Prop. Advisors, LLC*, 2009 WL 2055206 (D. Colo. July 10, 2009) (*overruled on other grounds in Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014)).

Therefore, in contravention of the court's order Defendant failed to fully indicate the names and citizenship of its members, much less whether Zajpt, Copley, or Belfhadfa are members of any Wyoming, LLC—Credit Wellness or Global Business Resources. Furthermore, Defendant has not provided any evidence to show whether Zajpt, Copley, or Belfhadfa have any minimum contacts with Wyoming, under principles of either specific or general jurisdiction. It is also worth noting that Defendant does not even argue that joining Belfhadfa is feasible. (*See* ECF No. 14 at 18.) The complaint states that "Belfhadfa's current state or country of residence is unknown" to Plaintiff. (Id. at 4.) Defendant makes no further argument and cites no evidence regarding Belfhadfa's citizenship, residence, or her minimum contacts with Wyoming which would establish this Court's ability to exercise personal jurisdiction over her. (ECF No. 1 at 4). The Court is therefore completely unable to assess whether joinder of Zajpt, Copley, or Belfhadfa is or is not feasible based on this court's personal jurisdiction over any of those individuals—which is Defendant's burden as the movant under Rule 12(b)(7). Defendant will not be allowed to have its cake and eat it too. Defendant's steadfast refusal to disclose its membership and failure to produce any additional evidence to show that this court has personal jurisdiction over Zajpt, Copley, or Belfhadfa dooms Defendant's motion to dismiss under Rule 12(b)(7) based on feasibility of joinder alone.

### 4.3 <u>Whether Zajpt, Copley, and Belfhadfa are Indispensable</u>

Even if Defendant had met its burden to show that the joinder of Zajpt, Copley, and Belfhadfa were not feasible, Defendant fails to argue—much less meet its burden to show—that Zajpt, Copley, and Belfhadfa are indispensable parties whose absence requires dismissal. Instead, Defendant argues that Zajpt and Copley could be feasibly joined, and then incorrectly argues that because they are necessary parties and their joinder is feasible then Plaintiff's complaint must be dismissed. (ECF No. 14 at 17–19.) This is not the standard under Rule 12(b)(7) and Rule 19.

First, under Rule 19, the court must examine whether the absent party is a "required" or "necessary" party. *Id.*; Fed. R. Civ. Pro. 19(a)(1). Second, "a necessary person must be joined as a party if joinder is feasible." *Davis ex rel. Davis*, 343 F.3d at 1289. Third, "[i]f a necessary person cannot be joined," the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, because the absent person . . . is indispensable to the litigation at hand." *Id.* (citing Fed. R. Civ. Pro. 19(b)). Therefore, even if Defendant had succeeded in showing that the joinder of Zajpt, Copley, and Belfhadfa was feasible, the mandatory remedy under Rule 19 would be to join them as necessary parties—not dismissal of Plaintiff's complaint. It would only be if joinder of Zajpt, Copley, and Belfhadfa were *not feasible* that the court would be required to proceed to the third step of the Rule 12(b)(7) analysis and determine whether Zajpt, Copley, and Belfhadfa were indispensable parties and that the case must be dismissed. *Id.*; *Swartz v. Beach*, 229 F. Supp. 2d 1239, 1274 (D. Wyo. 2002). Because Defendant has confused the requirements of Rule 12(b)(7) and Rule 19, it fails to argue or offer any evidence that Zajpt, Copley, and Belfhadfa are indispensable parties. Therefore, Defendant's

request to dismiss Plaintiff's complaint under Rule 12(b)(7) must also be denied for Defendant's failure to show the indispensability of Zajpt, Copley, and Belfhadfa as parties to this action.[4]

### 5. **Identity of Members of Credit Wellness**

By text only order (ECF No. 17) this Court required that Credit Wellness LLC file a disclosure statement in compliance with Fed. R. Civ. P. 7.1(a)(2), given that jurisdiction in this case could be based upon diversity. In response, Defendant (ECF No. 26) inadequately responded that "Credit Wellness LLC is registered in the State of Wyoming and is wholly owned by Global Business Resources, LLC, a Wyoming limited liability company. The citizenship of Credit Wellness LLC is Wyoming and Maryland." *Id.*

As noted above, because the citizenship of an LLC is determined by the citizenship of each of its members, "where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers there may be to determine the citizenship of the LLC." *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 593 F.3d 412, 420 (3rd Cir. 2010) (internal citations omitted). Defendant failed to identify the members of Global Business Resources, LLC, although it appears somebody resides in Maryland. (See ECF No. 26). At this stage, having determined a valid claim under the DTSA exists, subject matter jurisdiction exists based upon federal question—not diversity—so this Court will not pursue the Defendant's deficiency, the consequences are self-evident under Rule 12(b)(7).

---

[4] Of course, if Defendant is truly concerned that Zajpt, Copley, and Belfhadfa are necessary parties whose interests will be harmed by not being joined to this action, nothing prevents Zajpt, Copley, and Belfhadfa from voluntarily intervening and consenting to this court's jurisdiction. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174–75 (10th Cir. 1992) ("A defect in the district court's jurisdiction over a party is a personal defense which may be asserted or waived by a party.") (internal quotations omitted); *see e.g., Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, 2021 WL 10428708, at *8 (E.D. Tenn. Apr. 28, 2021) ("Caelum argues that Columbia cannot be joined because the Court lacks personal jurisdiction over Columbia. . . . But there has been inadequate briefing on that fact, and Columbia could always decide to waive personal jurisdiction.").

## CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) is granted in part and denied in part. Plaintiff's claim for aiding and abetting the misappropriation of trade secrets (Claim III) is not a cognizable claim under the Defend Trade Secrets Act or the Wyoming Uniform Trade Secrets Act and must therefore be dismissed. Defendant's arguments that Plaintiff failed to state a claim for misappropriation of trade secrets in violation of the DTSA and the WUTSA are unfounded. Because Plaintiff's DTSA claim under federal law survives, Defendant's request to dismiss the remainder of Plaintiff's complaint for lack of pendent subject-matter jurisdiction is denied. Likewise, Defendant fails in its burden to show that dismissal of Plaintiff's complaint is warranted under Rule 12(b)(7) for failure to join necessary and indispensable parties.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, titled "Defendant's Responses Pursuant to Fed. R. Civ. P. 12(b)(1)(6)&(7) in Lieu of Answer" (ECF No. 14) is **GRANTED IN PART AND DENIED IN PART**. Defendant's request to dismiss Plaintiff's "Third Claim for Relief" for aiding and abetting misappropriation of trade secrets is **GRANTED**. However, Defendant's request to dismiss the complaint and any or all of Plaintiff's remaining claims is **DENIED**.

**DATED:** January _9th_, 2024.

Scott W. Skavdahl
United States District Judge